**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GUILLERMO ALVAREZ,

                      Petitioner,                    Civil No. 07-4383 (SRC)

          v.

BRUCE A. HAUCK, et al.,                 **O P I N I O N**

                      Respondents.

**APPEARANCES:**

        GUILLERMO ALVAREZ,
        P.O. Box 266
        New Brunswick, New Jersey 08903[1]
        Petitioner pro se

        JOHN L. MOLINELLI, Prosecutor, Bergen County
        CATHERINE ANTOINE FODDAI, Assistant Prosecutor
        Attorneys for Respondents

**CHESLER, District Judge**

      On August 30, 2007, Petitioner, being then a prisoner confined at Northern State Prison,

Newark, New Jersey, executed the instant Petition for a Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254(a), challenging a judgment of conviction in the Superior Court of New Jersey, Law

Division, Bergen County.  See Docket Entry No. 1, ¶ 1.  The Clerk received Petitioner's application

---

    [1]  It appears that Petitioner was released from his place of incarceration, presumably on parole, on December 21, 2007, that is,  about three and a half months after the Clerk received the Petition and five days after Respondents' Answer was docketed in this matter.  However, Petitioner meets the "in-custody" requirement of Section 2254 since he filed this matter while still being incarcerated.

on September 12, 2007.  See Docket Entry No. 1, "Date Filed."  On September 17, 2007, this Court

advised Petitioner of his rights, pursuant to the holding of Mason v. Meyers, 208 F.3d 414 (3d Cir.

2000), see Docket Entry No. 2, and, following Petitioner's affirmation of his challenges, directed

Respondents to file their Answer to the Petition.  See Docket Entry No. 5.  On December 14, 2007,

Respondents filed their Answer urging this Court to dismiss the Petition.  See Docket Entry No. 9.

## DISCUSSION

Petitioner challenges a judgment of conviction filed on April 23, 2003, in the Superior Court

of New Jersey, Law Division, Bergen County, after a jury convicted him of burglary and theft.  See

Pet., ¶¶ 1-6.  Petitioner appealed his conviction to the Superior Court, Appellate Division, which

affirmed the conviction, and sought certification from the Supreme Court of New Jersey, which

denied him certification.  See id., ¶ 9.  In his instant Petition, Petitioner raises the following four

Grounds:

Ground One:   "[THE] TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE
              LAW OF CROSS-RACIAL IDENTIFICATION."

Ground Two:   "THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY
              ON THE LAW OF ACCOMPLICE LIABILITY."

Ground Three: "THE TRIAL COURT DEPRIVED [PETITIONER] OF DUE PROCESS
              BY EXCLUDING ADMISSIBLE DEFENSE EVIDENCE."  Id., ¶ 12(C).

Ground Four:  "THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE."

## I.      FACTUAL BACKGROUND

The somewhat convoluted circumstances of Petitioner's offense, gleaned by this Court from

the documents attached to Respondents' Answer, appear to be in full coherence with the summary

provided by the Appellate Division.  Specifically, the Appellate Division outlined the relevant events

as follows:

> [Petitioner's] convictions rest upon an incident that occurred [on] March 11, 2002, in Oradell, New Jersey, when the home of Anne Marie Quinn was burglarized . . . . Ms. Quinn's house is located at the end of Demarest Avenue in Oradell . . . . A small unpaved street, Lakeview Road, connects the end of Demarest Avenue and Grove Street. Lakeview Road is primarily used by those living in the neighborhood. . . . Ms. Quinn has three young children, and at 12:30 p.m. she picked up her daughter at school to bring her home for lunch.  She was in her kitchen . . . when she noticed through her windows an unfamiliar car driving slowly down Lakeview Road.  When the children had finished eating, they all got into the car to take Ms. Quinn's daughter back to school.  They headed down Lakeview and passed the same car.  Because Lakeview is so narrow, the two cars passed within inches of each other, and Ms. Quinn observed the two occupants.  She also noted that the car had a New York license plate, which she considered unusual [and] wrote down the license plate number.  She proceeded to drop her daughter off at school.  When she returned, she met a neighbor, Janet Looram, walking on Lakeview and she pulled her car over to speak for a few minutes.  As the women were talking, the same car passed them, and both remarked upon it.  They also noted that the car seemed to wait for some period of time at the intersection of Demarest and Oradell Avenues.  Ms. Quinn also noted that the car's only occupant was the driver, whom she had seen at very close range a few minutes earlier.  She then asked Ms. Looram to come to the house for a cup of tea.  The two women arrived at the house with Ms. Quinn's two young children and found that the side door had been tampered with.  Ms. Quinn heard a voice in the house.  The two women, taking the children, retreated across the street and called the police, who responded immediately. . . . Ms. Quinn['s  house was] ransacked, with various items stolen.  The police traced the license plate number provided by Ms. Quinn to a vehicle registered in [Petitioner's] name. . . . Based upon her observations of the car's driver, Ms. Quinn selected [Petitioner's]  picture from a photo array [and] identified [Petitioner] at trial.  Two witnesses testified on [Petitioner's]  behalf. . . . Mr. Suarez testified that [Petitioner] worked for him at his garage in Union City [and] would leave only to run errands or to get lunch.  The import of his testimony was that such a brief excursion did not afford enough time to travel from Union City to Oradell and back.  Mr. Ayala testified that he had dinner with [Petitioner] on March 8, 2002, [when Petitioner] was approached by a man named Enrique who asked to borrow [Petitioner's] car.  Mr. Ayala saw [Petitioner] give Enrique the keys.  Mr. Ayala [also testified that he] did not see the car again until the evening of March 11, when it was parked on the street outside the apartment building in which they both lived. [Petitioner], who had two prior convictions for burglary, did not testify.

State v. Alvarez ("Alvarez"), 2007 WL 1214712, at *1-2 (N.J. Super. Ct. App. Div. April 26, 2007).

## II.    STANDARD OF REVIEW

A <u>habeas</u> <u>corpus</u> petition must meet "heightened pleading requirements." <u>McFarland v.</u> <u>Scott</u>, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  <u>See</u> 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); <u>accord</u> <u>Barry v. Bergen County Probation Dep't</u>, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." <u>Engle v. Isaac</u>, 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (the district court erred when it "went beyond the habeas petition"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (the court is not permitted to consider ground, evident from the facts but not raised in the petition).  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim. See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

Moreover, the AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established

federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

(d)     An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d).

Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  Whether a

state court's application of federal law is "unreasonable" must be judged objectively; an application

may be incorrect, but still not unreasonable.[2] See id. at 409-10.  "The unreasonable application test

is an objective one - a federal court may not grant habeas relief merely because it concludes that the

state court applied federal law erroneously or incorrectly."  Thomas v. Varner, 428 F. 3d 491, 497

(3d Cir. 2005) (quoting Jacobs v. Horn, 395 F. 3d 92, 100 (3d Cir. 2005)).

## III.   CHALLENGES TO JURY INSTRUCTIONS

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas

relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal

proceeding,

> [t]he only question for us is whether the ailing instruction by itself so infected the
> entire trial that the resulting conviction violates due process.  It is well established
> that the instruction may not be judged in artificial isolation, but must be considered
> in the context of the instructions as a whole and the trial record. In addition, in
> reviewing an ambiguous instruction . . . , [the court must] inquire whether there is a
> reasonable likelihood that the jury has applied the challenged instruction in a way
> that violates the Constitution.  And [the court must] also bear in mind [that the
> courts] defined the category of infractions that violate 'fundamental fairness' very
> narrowly.  Beyond the specific guarantees enumerated in the Bill of Rights, the Due
> Process Clause has limited operation.

Estelle v. McGuire, 502 U.S. at 72-73 (quotation marks and citations and omitted).  Thus, the Due

Process Clause is violated only where "the erroneous instructions have operated to lift the burden

of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d at

---

[2] See also Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) ("[D]ecisions of
federal courts below the level of the United States Supreme Court may be helpful to [a court] in
ascertaining the reasonableness of state courts' application of clearly established United States
Supreme Court precedent, as well as helpful amplifications of that precedent") (citations and
internal quotation marks omitted).

416 (1997); see also Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

## A.   Witness Identification Jury Instructions

Petitioner's Ground One is based on the alleged lack of cross-racial witness identification instructions.  See Pet. ¶ 12(A). Being presented with this issue, the Superior Court of New Jersey, Appellate Division, summarized the procedural complications related to this issue as follows:

> At the conclusion of the evidence, the trial court conducted a charge conference, during which [Petitioner's] counsel requested a charge on cross-racial identification [asserting that Petitioner and Ms. Quinn, the victim of the crime who identified Petitioner were of "different races." So asserting, Petitioner's counsel was relying on] State v. Cromedy, 158 N.J. 112 (1999).  The trial court noted that [Petitioner] was not of a different race than Ms. Quinn but that the charge could be modified for ethnicity [since Petitioner was an ethnic Hispanic, while Ms. Quinn was not. Petitioner's] counsel stated, "Dark skinned persons are different from Caucasians," to which the trial court responded that [Petitioner] was "not that dark skinned." . . . The prosecutor then interjected that he had no objection to such a charge, and the court said it would include it in the instructions [since Petitioner's] counsel [so] wished.  [Petitioner's] appellate counsel, as part of the regular course of prosecuting [Petitioner's] appeal, ordered a trial transcript.  The transcript of the court's charge [however,] did not include any reference to a cross-ethnic identification, and [Petitioner's appellate] counsel framed the first argument on appeal accordingly, contending that the trial court erred by omitting such a charge. . . . [T]he matter was temporarily remanded to the trial court to settle the record on the court's charge. . . . The trial court [then] conducted a remand hearing at which the . . . trial court declined to make any findings; it stated . . . it would have been certain that it gave a cross-ethnic identification charge but . . . it had never known the reporter to make [such] a significant error.

Alvarez, 2007 WL 1214712, at *3-4; accord Ans., Exs. 1-4, 11, 13.

In light of the foregoing, the Appellate Division "conduct[ed its] review of the matter from the perspective that the charge on cross-ethnic identification was not given." Id. at *4. The analysis conducted by the Appellate Division was expressly based on--and limited to--examination of state law, and the conclusions reached read as follows:

> The Supreme Court [of New Jersey] addressed the question of cross-racial identification in State v. Cromedy, [158 N.J. 112 (1999)]. The defendant in [Cromedy], who was African-American, was charged with rape of a white woman. . . . The defendant's attorney requested a charge on cross-racial identification, but the trial court declined the request. The Supreme Court [of New Jersey] directed that such a charge should be given when identification is a crucial issue in the case and an eye-witness's cross-racial identification is not corroborated by other evidence which would give it independent reliability. [See] id. at 132. . . . Following Cromedy, [the Appellate Division has] been called . . . to consider the applicability of the principles [to] situations involving Hispanics. . . . [I]n State v. Valentine, 345 N.J. Super. 490 ([N.J. Super. Ct.] App. Div. 2001), certif. denied, 171 N.J. 338 (2002), . . . Judge Rodriguez . . . noted that the term "Hispanic" is an ethnic identification, not a racial identification. [See] id.
>
>> Hispanics are of different races, i.e. African-American, Caucasian, Native-American, or Asian. . . . A Hispanic person can also be of multi-racial descent. . . .
>
> Id. at 497. [Hence,] in Valentine, [the Appellate Division] refused to extend Cromedy to the area of cross-ethnic identification, noting that members of the same race may have different ethnic and cultural self-identifications. [See] id.

Alvarez, 2007 WL 1214712, at *4-5. Noting that the issue at hand presented a question of cross-ethnic rather than cross-racial identification, the Appellate Division analogized Petitioner's case to Valentine, contrasted it with Cromedy, and found no reversible error in the event Petitioner's trial judge actually omitted giving cross-ethnic identification. See id. at *6. The Supreme Court of New Jersey agreed, and the instant Petition followed. In accordance with the scope of review allowed by 28 U.S.C. § 2254, this Court adopts the Appellate Division's factual presumption that the jury instructions reflected in the transcript had no cross-ethnic identification charge.

There is no precedent by the United States Supreme Court establishing a criminal defendant's right to cross-racial, moreover cross-ethnic, witness identification instruction. Cf. United States v. Suggs, 230 Fed. App. 175, 184 (3d Cir. 2007) ("our Court has no . . . requirement" for cross-racial jury instructions). Petitioner's argument is based solely on inapplicable state-law precedent dealing with a cross-racial scenario, Cromedy, 158 N.J. 112, contrasted by the Appellate Division with the applicable precedent in Valentine, 345 N.J. Super. 490, under which Petitioner has no claim even under the state law. Alvarez, 2007 WL 1214712, at *4-5. Consequently, Petitioner's state-law based argument challenges a state law finding and, hence, falls outside of this Court's subject matter jurisdiction. See Bradshaw v. Richey, 546 U.S. 74 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Furthermore, this Court does not need to reach the question whether a criminal defendant is entitled to cross-racial witness identification instructions, since the state courts found as a fact that Petitioner, although ethnic Hispanic, is Caucasian, just like Ms. Quinn, and this Court is bound by such factual finding because Petitioner has not rebutted that finding by clear and convincing evidence.[3]    Finally, this Court finds that the Appellate Division's ruling as to overall sufficiency of Petitioner's trial court's instructions was not an unreasonable application of the Supreme Court's precedent. According to the transcript, Petitioner's trial judge instructed the jury as follows:

---

[3]

    This Court, same as the Appellate Division, examined Petitioner's photograph from the file of New Jersey Department of Corrections and concluded that Petitioner's features appear unquestionably Caucasian to an objective observer. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1299209&n=0>>.

To decide whether the identification testimony is sufficiently reliable evidence upon which to conclude that this defendant is the person who committed the offenses charged, you should evaluate the testimony of the witness in light of the factors for considering credibility that I have already explained to you.  In addition, you may consider the following factors:

(1)     The witness' opportunity to view the person who committed the offense at the time of the offense.

(2)     The witness' degree of attention on the perpetrator when [s]he observed the crime being committed.

(3)     The accuracy of any description the witness gave prior to identifying the perpetrator.

(4)     The degree of certainty expressed by the witness in making any identification.

(5)     The length of time between the witness' observation of the offense and the first identification.

(6)     Discrepancies or inconsistencies between identifications, if any.

(7)     The circumstances under which any out-of-court identification was made.

(8)     Any other factor based on the evidence or lack of evidence in the case which you consider relevant to your determination whether the identification was reliable.

If, after consideration of all of the evidence, you determine that the State has not proven beyond a reasonable doubt that the defendant was the person who committed these offenses, then you must find the defendant not guilty. If, on the other hand, after consideration of all of the evidence, you are convinced beyond a reasonable doubt that the defendant was correctly identified, you will then consider whether the State has proven each and every element of the offenses charged beyond a reasonable doubt.

Alvarez, 2007 WL 1214712, at *6.  Evaluating the content of these instructions under the state law, the Appellate Division found no error.  See id.  This Court, in turn, finds that the state court's decision is not an unreasonable application of the Supreme Court's precedent.  There appears to be no "reasonable likelihood that the jury . . . applied the [above-quoted] instruction in a way that violate[d] the Constitution," Estelle v. McGuire, 502 U.S. at 72-73, since no statement made by Petitioner's trial judge could be interpreted as "lift[ing] the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d at 416.  Therefore, Petitioner's

Ground One claim will be dismissed for failure to assert a violation of his federal rights.

### B.      Lesser Included Offense Instructions

Petitioner's Ground Two reads as follows: "The trial court erred in its instructions to the jury on the law of accomplice liability. Supporting facts: The trial court['])s instructions pertaining to [Petitioner's] criminal responsibility as accomplice was incomplete and prejudicial." Pet. ¶ 12(B). Although Petitioner did not clarify the meaning of his phrase "incomplete and prejudicial," this Court presumes that Petitioner intended to assert that his trial "court failed to comply with State v. Bielkiewicz, 267 N.J. Super. 520 (N.J. Super. Ct. App. Div. 1993), [the case] in which [the Appellate Division] reversed a defendant's conviction as an accomplice for the failure of the trial court to make clear to the jury that an accomplice may be convicted of a lesser offense than a principal if he or she does not share the same criminal intent as the principal."[4] Alvarez, 2007 WL 1214712, at *6.

> Responding to Petitioner's allegations, the Appellate Division stated as follows:
>
> Here, [Petitioner's trial] court charged the jury twice on accomplice liability, once with regard to the crime of burglary, and again with regard to the crime of theft. Each time, the trial court clearly told the jury that in order to find [Petitioner] guilty, it would have to be satisfied beyond a reasonable doubt that it was [Petitioner's] purpose to promote or facilitate that particular crime.  The trial court also told the jury each time that it had to be satisfied beyond a reasonable doubt that [Petitioner] "possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act."  There was no error in the charge.

Id.  Although the above-quoted finding does not expressly address the issue of lesser-included offense, this Appellate Division's statement should be assessed in light of Petitioner's challenge based on the holding of Bielkiewicz, 267 N.J. Super. at 531.  In Bielkiewicz, the Appellate Division ruled that a trial court should instruct a jury that one charged as an accomplice can be convicted of

---

[4]  This Court's presumption is based on the fact that this allegation was the only one duly exhausted in state courts with regard to his challenge mimicking his current Ground Two.

a lesser crime than one charged as a principal, but only where the two participants were in a principal-accomplice relationship rather than acted as equal principals. See Bielkiewicz, 267 N.J. Super. at 531. Consequently, the above-quoted finding reflected the Appellate Division's determination that Petitioner was not entitled to the lesser included offense instruction under the state law, i.e., Bielkiewicz. See Alvarez, 2007 WL 1214712, at *6. It follows that this Court lacks subject matter jurisdiction over Petitioner's challenge to that finding, since such challenge does not assert a constitutional violation but poses a challenge to the state courts' interpretation of state law. See Bradshaw, 546 U.S. 74 ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Alternatively, if this Court is to hypothesize that Petitioner asserted a constitutional violation and this Court had jurisdiction over the claim, the failure to give a lesser offense instruction was not contrary to, or an unreasonable application of, Supreme Court precedent because: (1) the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser included offense in a non-capital case, and (2) the lesser included offense instruction is constitutionally required in a capital case only when warranted by the evidence, and the Appellate Division in this case held that the requested lesser included offense charge was not supported by the evidence. Specifically, the Supreme Court held in Beck v. Alabama, 447 U.S. 625 (1980), that, "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense - but leaves some doubt with respect to an element that would justify conviction of a capital offense - the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted [capital] conviction" in violation of Due Process. Id. at 637. However, the Supreme Court has not extended Beck to

Page 14 of 20

noncapital cases.  See Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (where the Supreme Court noted that, "[o]utside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error.  To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief"); accord Schad v. Arizona, 501 U.S. 624, 646-47 (1991) (where the Supreme Court held that, if a jury was given a choice between finding the defendant guilty of capital murder and the lesser included non-capital offense of second-degree murder, due process did not entitle the defendant to a jury instruction on the lesser included offense of robbery.  The Court explained that "[t]he goal of the Beck rule . . . is to eliminate the distortion of the fact[-]finding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.  This central concern of Beck simply is not implicated in the . . . case [where a] petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence").  Since, here, the jury was not forced to choose between convicting Petitioner of capital offense and setting him free, Supreme Court precedent did not require the instruction on the lesser included offense.

        In alternative, Supreme Court precedent holds that the lesser included offense instruction might be required in non-capital cases, but only if the need for such instruction is supported by the evidence determined by the state courts.  See Hopper v. Evans, 456 U.S. 605 (1982) (where the Supreme Court clarified that "due process requires that a lesser included offense instruction be given [in a capital case] only when the evidence warrants such an instruction" ); see also Kontakis v. Beyer, 19 F. 3d 110, 119 (3d Cir. 1994) ("Nothing in Beck permits us to grant habeas relief when a state court refuses to charge a jury that it may convict a defendant for an offense when under state law the evidence could not justify the conviction").  In the case at bar, however, the Appellate Division made

a clear determination that Petitioner's trial court did not err in excluding the <u>Bielkiewicz</u> instruction from the jury charge, hence unambiguously indicating its affirmation of the trial court's finding that the <u>Bielkiewicz</u> instruction was not supported by the evidence.  <u>See</u> <u>Alvarez</u>, 2007 WL 1214712, at *6, 8 ("nothing within the record . . . support[s] presenting such a charge to the jury" and expressly articulating the N.J.S.A. § 2C:1-8(e) standard, substantively identical to those articulated by the Supreme Court in <u>Hopper</u> and <u>Kontakis</u>, with respect to Petitioner's related lesser-offense challenge). This Court, therefore, is bound by the Appellate Division's evidentiary finding, since Petitioner has not rebutted this finding by clear and convincing evidence.  <u>See</u> 28 U.S.C. § 2254 (e)(1). Consequently, this Court dismisses Petitioner's Ground Two challenges for lack of jurisdiction or, in alternative, on the ground that the state court's conclusion was a reasonable application of establish Supreme Court's precedent.

## IV.   ALLEGED FAILURE TO ADMIT CERTAIN EVIDENCE

In his Ground Three, Petitioner alleges that his trial court "deprived [him] of due process by excluding admissible defense evidence."[5]  Pet. ¶ 12(C).  During his state appellate proceedings, Petitioner elaborated on the aforesaid claim by alleging that his trial court erroneously excluded an exculpatory statement, <u>i.e.</u>, a note that Petitioner wrote to his arresting officers, in which he asserted that he had no information of the offense at issue and his participation in the events that gave rise to the offense was limited to him lending his car to his friend named Enrique.  <u>See</u> Ans., Ex. 3, at 32-34. In light of the fact that Petitioner did not testify during his trial, <u>see</u> <u>Alvarez</u>, 2007 WL 1214712, at *2, his trial court excluded that exculpatory statement as hearsay.    Replying to Petitioner's Ground

---

[5]  Petitioner's "supporting facts" stated in his Petition are wholly incongruent with Petitioner's Ground Three and, thus, his supporting facts are presumed to be the same as asserted with respect to Petitioner's identically-reading claim duly exhausted in the state courts.

Three, Respondents assert that: (1) Petitioner's Ground Three "fails to raise a federal constitutional claim," and (2) "[i]n any event, it is meritless, [even though (3)] the deferential standard of [the] AEDPA does not apply" because "the Appellate Division mentioned the claim in its opinion [but] never decided the matter." Ans. at 13-14. Agreeing with Respondents' first two conclusions, this Court dismisses Petitioner's Ground Three.[6]

As this Court already explained <u>supra</u>, matters of state substantive law, rules of procedure and evidence are not reviewable in a federal habeas petition. The Supreme Court guided that, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67-68; <u>see also</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) ("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"). "[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith</u>, 120 F.3d at 414. However, evidentiary rulings may violate due process when the petitioner was denied fundamental

_____

[6] Since: (a) the Appellate Division expressly listed the claim mirroring Petitioner's instant Ground Three in its opinion, <u>see</u> <u>Alvarez</u>, 2007 WL 1214712, at *2; and (b) affirmed Petitioner's conviction in all respects, <u>see</u> <u>id.</u> at *8, Petitioner's claim corresponding to his Ground Three is deemed dismissed on merits regardless of the fact that the Appellate Division did not address the specifics of the claim. "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with <u>res</u> <u>judicata</u> effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), <u>reversed on other grounds sub nom.</u> <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>see also</u> <u>Rolan v. Vaughn</u>, 445 F. 3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. <u>See</u> <u>Rompilla</u>, 355 F.3d at 247.

fairness at trial.  See Kontakis v. Beyer, 19 F.3d at 120; accord United States v. Agurs, 427 U.S. 97, 108 (1976) (explaining that, for a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial); Lisenba v. California, 314 U.S. 219, 228 (1941) (holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").  Hence, the appropriate inquiry is whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or is an omission inconsistent with the rudimentary demands of fair procedure.  See United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is deemed not harmless only if it aborts the basic trial process or denies it altogether. See Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, this Court finds that the state court's evidentiary ruling with respect to the exclusion of Petitioner's exculpatory statement did not violate his right to due process.  The statement was admittedly hearsay and did not fall under any of the hearsay exceptions of the New Jersey Rules of Evidence, nor was it an admission against Petitioner's interests, which could have been offered into the record, pursuant to the state rules of evidence.  Moreover, the factual import of Petitioner's exculpatory statement was anyway conveyed to his jurors, although it was done indirectly, i.e., through trial testimonies of Petitioner's witnesses, Messrs. Suarez and Ayala. See Alvarez, 2007 WL 1214712, at *2.  Thus, Petitioner's inadmissible hearsay statement was properly excluded.

There is nothing on the record suggesting that this exclusion denied Petitioner fundamental fairness during his trial.  To the contrary, the record indicates that the trial process was fundamentally fair.  Hence, the evidentiary ruling was a matter of state law over which this Court has no jurisdiction. Accordingly, Petitioner's Ground Three is dismissed for lack of jurisdiction.

## V.     WEIGHT OF EVIDENCE CHALLENGE

Finally, Petitioner's Ground Four asserts that the verdict entered was against the weight of evidence.  Addressing that argument, the Appellate Division concluded that Petitioner's allegations were without merit and did not even "warrant discussion in a written opinion."  Alvarez, 2007 WL 1214712, at *7.

A claim that the jury's verdict is against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process."  See Douglas v. Hendricks, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002).  However, a claim that the jury's verdict is against the weight of the evidence raises a due process concern only if, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Here,

> [Ms. Quinn] noticed [Petitioner's] car driving slowly down Lakeview Road.  [Later on, she drove and] passed the same car. . . .  [T]he two cars passed within inches of each other, and Ms. Quinn observed the two occupants [and] wrote down the license plate number.  [Shortly thereafter, she saw] the same car pass[ing her and her neighbor] and wait[ing] at the intersection [near Ms. Quinn's house].  Ms. Quinn also noted that the car's only occupant was the driver, whom she had seen at very close range a few minutes earlier.  [Few minutes later her house was] ransacked . . . .  Ms. Quinn selected [Petitioner's] picture from a photo array [and] identified [him] at trial.

Alvarez, 2007 WL 1214712, at *1-2.  Viewing the evidence in the light most favorable to the prosecution, see Jackson, 443 U.S. at 319, this Court finds that the state court's conclusion was not an unreasonable application of Supreme Court precedent.  The fact that Petitioner was the owner of the car, read against Ms. Quinn's identification (performed after two encounters with Petitioner, both of which were in broad daylight, and one of which was at very close range and protracted in time), indicates that there might be indeed "a rational trier of fact [who] could have found the essential elements of the crime beyond a reasonable doubt" on the basis of this evidence. Id.  Consequently, Petitioner's verdict was a matter of state law over which this Court lacks subject matter jurisdiction. The Court, therefore, dismisses Petitioner's Ground Four on that basis.

## CONCLUSION

For the foregoing reasons, this Court denies Petitioner writ of habeas corpus.  A certificate of appealability will not issue.[7]  An appropriate Order accompanies this Opinion.

s/ Stanley R. Chesler
**Stanley R. Chesler**
**United States District Judge**

Dated: April 15, 2008

---

[7]  The Court must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).